# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

CORY BONE, individually and on
behalf of all other similarly situated,

        Civil Action No. 2:20-cv-00697-SMV-GJF

        Plaintiff,

vs.

  XTO ENERGY, INC.

        Defendant.

## **DEFENDANT XTO ENERGY INC.'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), Defendant XTO Energy Inc. ("XTO") respectfully requests that the Court dismiss, limit and/or strike the allegations contained in Plaintiff Cory Bone's Original Collective/Class Action Complaint ("Complaint") for the reasons set forth herein. XTO does not seek to dismiss Plaintiff's individual claims at this time, and is filing its Answer to those individual allegations in the Complaint contemporaneously with this Motion.[1]

Counsel for Plaintiff does not concur in the relief requested herein.

---

[1] Note, while XTO is not currently seeking dismissal of the purported class definition for the state law claim set forth in paragraph 90 and other related references in the Complaint, XTO denies that Plaintiff has asserted an appropriate class under the New Mexico Minimum Wage Act, denies that such a class should be certified under Rule 23, and further denies that any such putative class members are similarly situated to Plaintiff.

## BACKGROUND

XTO is a leading natural gas and oil producer operating throughout the United States and Western Canada. [2]  Complaint, Dkt. No 1, ¶ 21.  Plaintiff Cory Bone alleges that he provided services to XTO as a "Safety Consultant" near Carlsbad, New Mexico and in Texas for approximately twelve (12) months—from May 2018 through May 2019.  *Id.* at ¶¶ 19 and 24. According to Plaintiff, as a "Safety Consultant" his "primary job duties included enforcing XTO safety policies and procedures at XTO's and their clients' well sites." *Id.* at ¶ 27.  Plaintiff contends that his "daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by XTO and/or their clients," and that he "would conduct [his] day-to-day activities within mandatory and designed parameters in accordance with pre-determined operational plans created by XTO and/or their clients." *Id.* at ¶¶ 28 and 29.

Plaintiff alleges that he received a flat sum of pay for each day he worked, but did not receive overtime compensation for hours worked over forty (40) in a workweek in violation of the Fair Labor Standards Act ("FLSA").  *Id.* at ¶¶ 2, 4, 25, and 39.  Despite this broad allegation, Plaintiff does **not** identify a single workweek in which he worked **any** hours over forty (40), nor has he identified a single workweek in which he is allegedly owed **any** overtime compensation. Similarly without specific allegations, Plaintiff then generally avers that XTO failed to pay all other "Safety Consultants" in the United States overtime due under the FLSA.  As defined in the Complaint, Plaintiff seeks to represent an expansive and overbroad FLSA collective consisting of:

> *All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

[2]  XTO's Motion is premised in part on Rule 12(b)(6), which requires a district court to "accept all well-pleaded facts as true" and view them in the light most favorable to the plaintiff. *Peterson v. Xpo Logistics*, 812 F. App'x 754, 756 (10th Cir. 2020) (internal quotations omitted).  XTO therefore relies here on the allegations contained in the Complaint, without waiving its right to later contest such allegations.

*See* Complaint, Dkt. No 1, ¶ 52.   As described below, such a broad and vague class definition is improper, which this Court should dismiss, limit and/or strike.

## I.      RULE 12(B)(2) DISMISSAL OF ALLEGATIONS AGAINST NON-NEW MEXICO PUTATIVE CLASS MEMBERS IS WARRANTED FOR LACK OF PERSONAL JURISDICTION

Plaintiff filed his Complaint on July 14, 2020, advancing individual claims under the FLSA and the New Mexico Minimum Wage Act ("NMMWA"), as well as claims advanced on a collective action basis under the FLSA and class action basis under the NMMWA.   *See generally* Complaint, Dkt. No 1.   Essentially, Plaintiff claims that contrary to both statutes, he and other individuals who provided services to XTO were not paid proper overtime rates for all hours worked in excess of 40 hours per workweek.   *See id.* at ¶ 4. Accordingly, he seeks to certify a collective action of:

> *All safety consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

*Id.* at ¶ 52.   It is this attempt to pursue a nationwide collective action under the FLSA that is the subject of this Motion.   As will be demonstrated below, Plaintiff's attempt to pursue relief for work performed outside of New Mexico is jurisdictionally defective, and should be disposed of at this stage.

### A.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant is entitled to dismissal of claims for which the Court lacks personal jurisdiction.   In determining whether personal jurisdiction exists, Plaintiff bears the burden of proving personal jurisdiction can be properly exercised over XTO.   *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004).   Plaintiff must make a prima facie showing that personal jurisdiction exists, whether with the Complaint or other materials in the record.   *See id.*

In a case involving multiple plaintiffs or multiple claims, personal jurisdiction does not necessarily exist regarding all contested parties or claims even when it indisputably exists for some of them; the existence of personal jurisdiction must be evaluated on a claim-by-claim and party-by-party basis. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (quoting 4A Charles A. Wright et al., Federal Practice and Procedure § 1069.7 (4th ed. 2015)) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").

There are two kinds of personal jurisdiction that may exist for a given defendant and a given claim: specific jurisdiction and general jurisdiction. Specific jurisdiction can only be warranted based on an "affiliation between the forum [state] and the underlying controversy," and it is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal punctuation marks and citation omitted). Unless the defendant had sufficient claim-underlying contact with the forum state, then irrespective of whatever other contacts it has had with the forum state, specific jurisdiction does not exist for that claim. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999) (noting specific jurisdiction cannot exist unless "the litigation results from alleged injuries that arise out of or relate to [in-forum] activities"). Moreover, even assuming the defendant had minimum contacts with the forum state, specific jurisdiction cannot be exercised when doing so would "offend[] traditional notions of fair play and substantial justice." *Benton*, 375 F.3d at 1078 (citation omitted). That latter inquiry turns on the following factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies,

and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* (citation omitted).

Alternatively, in cases where non-corporeal entities such as Defendant have been sued, general jurisdiction exists only in the forum "in which the [defendant] is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. Although general jurisdiction can authorize even lawsuits based solely on non-forum conduct, general jurisdiction is normally only warranted in states where the defendant is incorporated or has its principal place of business. *See id.* at 919; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Outside those two particular states, general jurisdiction requires proof of exceptional circumstances to justify it. *See Bauman*, 571 U.S. 117, at 139, n.19.

### B.   Plaintiff Has Failed to Allege Sufficient New Mexico Contacts to Justify Specific Jurisdiction Regarding Pay for Non-New-Mexico Work

Specific jurisdiction cannot be shown to exist for the claims Plaintiff seeks to advance regarding work performed outside New Mexico. As near as can be determined, Plaintiff is alleging that XTO engaged in FLSA-violative practices outside of New Mexico, thereby causing putative plaintiffs alleged harm outside of New Mexico. Nowhere in the Complaint, or in any other part of the Court's record, is there anything indicating that the putative FLSA claims concerning non-New-Mexico work arise out of any of XTO's New Mexico contacts. In order to support specific jurisdiction for such FLSA claims in New Mexico, Plaintiff has to show XTO made such claim-implicating contacts in New Mexico. *Cf. Walden v. Fiore*, 571 U.S. 277, 285 (2014) (observing that the minimum contacts that must underlie the exercise of specific jurisdiction must comprise "the defendant's contacts with the forum State itself," as opposed to "the defendant's contacts with persons who reside there").

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), demonstrates the need to show that each putative claim itself has sufficient in-

forum contacts underlying it, rather than a similar in-forum claim. *Bristol-Myers* involved a mass-tort action in California against a pharmaceutical company, alleging that one of the company's medications injured more than 600 plaintiffs in violation of California law. *Id.* at 1778. More than half of the plaintiffs were residents of other states, and relatedly, those non-California plaintiffs did not allege they obtained their allegedly damaging medications in California, nor did they allege any connection to their injuries or treatment in California. *Id.* Despite the lack of in-forum injury links for the out-of-state plaintiffs, the California Supreme Court concluded there was specific jurisdiction for their claims because, due to the extensive other contacts the company had with California, specific jurisdiction ostensibly could be warranted with "a less direct connection" than usual. *Id.* at 1778–79. The California Supreme Court found such a connection in the similarity of out-of-state plaintiffs' claims to those raised by California plaintiffs, specifically that they all contested the same allegedly defective product and allegedly misleading marketing and promotion, and relatedly, that some research on the product was conducted in California. *Id.* at 1779.

The United States Supreme Court disagreed and held that specific jurisdiction was lacking for the out-of-state plaintiffs' claims. *Id.* at 1782. In reaching this holding, the Court reemphasized that specific jurisdiction requires a connection between the lawsuit at issue and the defendant's own contacts with the forum state. *See id.* at 1780 (quoting *Goodyear*, 564 U.S. at 919) (internal punctuation marks omitted) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."). By contrast, all of the alleged company conduct underlying the out-of-state plaintiffs' claims occurred outside of California. *See id.* at 1778. The holding of California's highest court, however, was inconsistent with the Court's holdings on personal jurisdiction, as via what the Court described as a "spurious forum of general jurisdiction," it used contacts only relevant for general jurisdiction analysis to

determine the sort of contacts required for specific jurisdiction to exist.  *Id.* at 1781.  But as the Court had previously noted, a party's "continuous activity of some sorts within a state is not enough to support the demand that the [party] be amenable to suits unrelated to that activity."  *Id.* (quoting *Goodyear*, 564 U.S. at 927) (internal punctuation mark omitted).  Moreover, the similarity between out-of-state and in-state plaintiffs' claims had no bearing on whether specific jurisdiction existed at all; any contacts and other links between a defendant and a third party, even a fellow plaintiff, is not normally enough to justify specific jurisdiction for a plaintiff's claims.  *See id.*

Although this case involves federal rather than state law claims, the same forum-specific contacts are required to justify specific jurisdiction here as in *Bristol-Myers*.  Federal law claims, even when brought in federal court, are normally subject to precisely the same limits on personal jurisdiction as state law claims.  *See United States v Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (noting that federal courts are limited by whether the forum state's courts could properly exercise personal jurisdiction over a party "[u]nless Congress specifically indicates otherwise").[3] Although federal courts have greater latitude over exercising personal jurisdiction when the underlying federal statute authorizes nationwide service of process, *see Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000), the FLSA is not such a statute.  *See Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (per curiam).  Consequently, for specific jurisdiction to exist regarding claims for work performed outside New Mexico, Plaintiff must prove XTO had sufficient contacts with New Mexico.

---

[3] Those limits, in turn, include whatever restrictions the forum state's long-arm statute imposes on personal jurisdiction.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1506–07 (10th Cir. 1995).  However, because New Mexico's long-arm statute extends personal jurisdiction as far as constitutionally permissible, *see FDIC v. Hiatt*, 872 P.2d 879, 881 (N.M. 1994), this issue can be resolved solely based on whether the Constitution permits the exercise of personal jurisdiction here.

Neither the Supreme Court nor the Tenth Circuit have addressed the specific issue about whether there is something about the FLSA that makes standard specific jurisdiction analysis, as reiterated in *Bristol-Myers*, inapplicable.  But in *Bristol-Myers*'s wake, district courts have repeatedly held that FLSA claims, like most other federal or state law claims, generally require the defendant to have in-forum contacts underlying an individual plaintiff's claims for that plaintiff's claim to be properly heard in the forum.  *See, e.g.*, *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 279–80 (S.D.N.Y. 2019) (dismissing out-of-state plaintiffs' FLSA claims against out-of-state defendants for lack of personal jurisdiction); *Szewczyk v. United Parcel Serv., Inc.*, Civ. A. No. 19-1109, 2019 WL 5423036, at *7–8 (E.D. Pa. Oct. 22, 2019) (recognizing that "§ 216(b) does not relieve plaintiffs of their obligation to establish personal jurisdiction over a defendant in compliance with constitutional due process principles"); *Rafferty v. Denny's, Inc.*, No. 5:18-CV-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019) (dismissing FLSA claims of out-of-state plaintiffs finding that that exercising personal jurisdiction over … claims of any out-of-state putative collective member would violate due process"); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 61–62 (D. Mass. 2018) (relying on *Bristol-Myers*, the court denied conditional certification of out-of-state plaintiffs against out-of-state defendants finding the court lacked personal jurisdiction over their claims).

As the Tenth Circuit's own authority has consistently emphasized the requirement that a claim must be supported by sufficient in-forum contacts to justify personal jurisdiction in the forum state, this Court should follow its pattern and hold that, since there is no allegation at all of such contacts for claims regarding work performed outside New Mexico, those claims cannot be heard here under a specific jurisdiction theory.  *See C5 Med. Werks, LLC v. CeramTec GmbH*, 937 F.3d 1319, (10th Cir. 2019) (rejecting specific jurisdiction over plaintiffs' trademark claims when

the defendant's only in-forum contacts were sporadic appearances at trade shows, which were "fortuitous" contacts insufficient to confer personal jurisdiction over the defendant); *Newsome v. Gallacher*, 722 F.3d 1257, 1262 (10th Cir. 2013) (holding that although various individual defendants had sufficient contacts with the forum state to justify personal jurisdiction over them, a corporate defendant's contacts were insufficient as it "performed all of its relevant services out-of-state on an out-of-state transaction"); *Dobbs v. Chevron U.S.A., Inc.*, 39 F.3d 1064, 1068 (10th Cir. 1994) (upholding dismissal of multiple defendants from a case when their only in-state contacts relevant to the claims against them "can hardly be regarded as having significant impact in" the forum state).

Even assuming *arguendo* there were some level of contacts that might justify the exercise of specific jurisdiction over Defendant regarding claims connected with non-New-Mexico work, exercising such jurisdiction here would offend traditional notions of fair play and substantial justice. *See Benton*, 375 F.3d at 1078. With regard to the first factor involved in that inquiry, it would be less convenient for XTO to litigate claims regarding out-of-state plaintiffs, requiring intrusive discovery and additional litigation activity, in a state where neither those plaintiffs, the relevant company witnesses, nor the underlying claims have any connection to the forum. *Cf. Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 38 (1st Cir. 2016) (noting that an Oregon corporate defendant's burden of appearing in Massachusetts for litigation was a factor "modestly in its favor" in opposing the exercise of specific jurisdiction).

The second factor even more strongly disfavors the exercise of specific jurisdiction in New Mexico, as New Mexico has no interest at all in resolving the claims of out-of-state putative plaintiffs against an out-of-state defendant within its borders; logically, the resident states of those parties have stronger interests in securing resolutions for the claims. *Compare Xilinx, Inc. v. Papst*

*Licensing GmbH & Co. KG*, 848 F.3d 1346, 1356 (Fed. Cir. 2017) (internal punctuation marks and citation omitted) ("Xilinx, which is headquartered in California, indisputably has an interest in protecting itself . . . by obtaining relief from a nearby federal court in its home forum."), *with Namer v. Martino*, Civ. A. No. 15-3417, 2016 U.S. Dist. LEXIS 5311, at *15–16 (E.D. La. Jan. 15, 2016) (observing that a forum state "has no interest in adjudicating a dispute that . . . appears to have taken place purely in [another state] between parties with the majority of their contacts in [that other state]").

The third factor likewise disfavors the exercise of specific jurisdiction, as the putative out-of-state plaintiffs remain fully able to pursue relief for their claims within their respective states, or even in either of XTO's states of residence.  *Cf. Roy*, 353 F. Supp. 3d at 58 (acknowledging that, although courts within the forum state were constitutionally forbidden from exercising specific jurisdiction over out-of-state plaintiffs' claims, they nevertheless "would potentially be able to bring a nationwide collective action" in either of two states where general jurisdiction could be exercised).

Finally, the fourth and fifth factors are neutral at best; this case can be at least as efficiently administered in XTO's two states of general jurisdiction (i.e., where XTO is incorporated and where it maintains its principal place of business), while New Mexico certainly has no more interest in resolving the wage and hour claims of out-of-state residents and an out-of-state defendant than their home states do.  *See Baskin-Robbins Franchising*, 825 F.3d at 38 (noting that although a forum state's courts "can effectively administer justice in the [subject] dispute, they have no corner on the market"); *Namer*, 2016 U.S. Dist. LEXIS 5311, at *15–16 (noting that a forum state lacks interest over resolving claims by out-of-state plaintiffs against an out-of-state defendant regarding out-of-state events); *see also Xilinx*, 848 F.3d at 1356 (stating that no state

had a relatively greater interest in resolving the federal claim involved in the litigation, as "the same body of federal . . . law would govern the . . . claim irrespective of the forum").

As it is impossible for Plaintiff to allege sufficient facts justifying the exercise of specific jurisdiction over FLSA claims regarding work performed outside New Mexico, those claims can only be heard in this forum if the Court can properly exercise general jurisdiction over XTO—which it cannot.

### C.      Plaintiff Has Not Alleged the Particular Sort of Contacts that Would Justify General Jurisdiction

Plaintiff has even more clearly failed to allege facts that justify the exercise of general jurisdiction over XTO, such as contending that XTO's principal place of business is New Mexico—which it is not.  In fact, to the extent it touches on general jurisdiction at all, the Complaint outright disclaims the existence of facts that would most easily do so.  It asserts that XTO is a Delaware corporation.  *See* Complaint, Dkt. No 1, at ¶ 14.  Aside from the New Mexico contacts underlying some claims here regarding work performed in New Mexico (which, by the Complaint's own reckoning, are the same non-unique contacts that can also be found throughout the United States, *see id.* at ¶ 19), the only other New Mexico contact alleged in the Complaint is the fact that XTO has a registered agent in New Mexico.  *Id.* at ¶ 14.  This cannot help Plaintiff prove the existence of general jurisdiction.  *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318–19 (11th Cir. 2018) (rejecting plaintiffs' arguments that general jurisdiction could be exercised over a defendant based on its registration to do business in the forum state and its appointing an agent for service of process there); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) ("[R]egistration of an agent for receipt of process does not establish general jurisdiction . . . .").

By any applicable measure, FLSA claims for work performed outside New Mexico cannot properly be heard by this Court.  Plaintiff has not alleged and cannot allege that such claims arise out of XTO's New Mexico contacts, thus refuting specific jurisdiction, and he has not alleged and cannot allege that XTO has the particular kinds of New Mexico contacts justifying general jurisdiction over it.  Irrespective of whether some claims are properly before this Court, or even whether other claims parallel what is alleged for FLSA claims centering on non-New-Mexico work, such claims fall outside this Court's jurisdiction.  *See Bristol-Myers*, 137 S. Ct. at 1782; *Soma Med. Int'l*, 196 F.3d at 1298.

### D.      It is Proper to Dismiss Jurisdictionally Flawed Claims Now

There is no reason to allow Plaintiff to move forward in this litigation regarding claims for non-New-Mexico work.  When, as here, there are apparent jurisdictional defects in such putative claims, it is more efficient to resolve such defects earlier on a motion to dismiss.  To do otherwise would require the parties to proceed with the notice process on behalf of individuals over whom the Court does not have jurisdiction, only to have them dismissed from the case later via separate motions to dismiss.  *See Weirbach v. Cellular Connection, LLC*, No. 5:19-cv-05310-JDW, 2020 U.S. Dist. LEXIS 144497, at *9 (E.D. Pa. Aug. 12, 2020) (holding the court "had to tackle th[e] question" of personal jurisdiction prior to issuing notices of the collective action as, in the event notice was provided to potential plaintiffs whose claims did not fall within the court's jurisdiction, "it would only sow confusion").  In addition, it would achieve nothing except to waste the parties' resources to conduct discovery regarding parties and claims over which this Court cannot exercise personal jurisdiction.  *See Naartex Consulting Corp. v. Watt*, 542 F. Supp. 1196, 1199 (D.D.C. 1982) (holding that, in light of apparent jurisdictional defects involving a plaintiff's claims against multiple individuals, "allowing plaintiff to conduct even limited discovery into [those] defendants

. . . would be unjustified").  For these reasons, the issue of personal jurisdiction over claims regarding non-New-Mexico work should be resolved at this early stage, and such claims must be dismissed under Federal Rule of Civil Procedure 12(b)(2).

## II.   RULE 12(B)(6) – DISMISSAL AND/OR STRIKE OF OVERBROAD FLSA COLLECTIVE DEFINITION AND RELATED ACTION ALLEGATIONS

### A.   Introduction

Dismissal is also proper under Federal Rule of Civil Procedure 12(b)(6).  Specifically, the Court should dismiss Plaintiff's overbroad collective definition because it fails to give XTO fair notice regarding the composition of Plaintiff's proposed collective and is not supported by any plausible factual allegations as required by the Federal Rules of Civil Procedure.  In his Complaint, Plaintiff—a "Safety Consultant"[4] working for RigUp, Inc., alleges he provided services to XTO for approximately twelve (12) months in Carlsbad, New Mexico and Texas.[5]  Plaintiff claims that XTO failed to pay him, and importantly, all other "Safety Consultants" in the United States overtime due under the FLSA.  As defined in the Complaint, Plaintiff seeks to represent an expansive and overbroad FLSA collective consisting of:

> *All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

---

[4]  XTO's contract was with the third party consulting firm RigUp, Inc., which provided various services to XTO, including the services of Plaintiff as a Drilling Safety Consultant in drilling operations near Carlsbad, New Mexico from approximately May 2018 through February 2019 and as a Wellwork Integrity Consultant concerning wellwork operations near Andrews, Texas, from approximately March 2019 through May 2019.  Despite these distinct and separate services, Plaintiff's proposed collective definition generically encompasses all "Safety Consultants" in the United States without regard to the services Plaintiff actually provided, the locations where he provided such services, or his RigUp, Inc. consulting firm.

[5]  Notably, Plaintiff's services to XTO were discontinued after he was found to be sleeping on job locations in multiple instances.

*See* Complaint, Dkt. No 1, ¶ 52.  The strikingly overbroad collective definition contained in Plaintiff's Complaint fails to provide XTO with notice of whom Plaintiff seeks to represent in this lawsuit.  Instead, Plaintiff's use of an ill-defined nationwide all-encompassing proposed collective definition is nothing more than a thinly veiled attempt to spark virtually unlimited solicitation and discovery into XTO's operations throughout the United States in the hopes of capturing as many new litigants as possible to increase potential settlement leverage, disregarding that other "Safety Consultants" may be wholly dissimilar to Plaintiff in title, duties, location, supervisors, schedules, hours, classification (as employees or contractors), third party consulting firms, and more.

Plaintiff's subterfuge does not stop there.  Notably, Plaintiff does not bring suit against Plaintiff's actual consulting firm/employer RigUp, Inc. (a third-party vendor to XTO— incredulously escaping even a mention in the Complaint), and instead has filed this suit against the vendor's customer (XTO).  In so doing, Plaintiff is attempting to circumvent the factual differences that the actual consulting firms (who are actually paying these workers) may have among these "Drilling Safety Consultants" or "Wellwork Integrity Consultants," such as pay plans, contractual terms, oral representations, length of terms, benefits, classifications (as employees or contractors), and so forth.  Moreover, Plaintiff's proposed collective definition is not limited to "similarly situated" individuals who provided services as "Drilling Safety Consultants" near Carlsbad, New Mexico, or "Wellwork Integrity Consultants" near Andrews, Texas.[6]

---

[6]  XTO does not concede that all "Drilling Safety Consultants" in Carlsbad, New Mexico or "Wellwork Integrity Consultants" in Andrews, Texas who are working for RigUp, Inc. are "similarly situated" with Plaintiff, or that conditional and/or class certification of such a group would be appropriate in this case.  XTO merely notes that such an allegation may have been more likely to satisfy the requirements of Fed. R. Civ. P. 8 and 12(b)(6) at the pleading stage.

As such, and as set forth in more detail below, Plaintiff has pled no facts to suggest that all "Safety Consultants" *nationwide* who provided services to XTO are similarly situated with respect to Plaintiff's FLSA allegations regarding particular consulting firms, titles, duties, locations, supervisors, schedules, pay plans, guarantees, contractual terms, employee/contractor classification, length of terms, hours worked, and alleged overtime entitlement under the FLSA. The Court should therefore dismiss and/or strike Plaintiff's proposed collective definition and proposed class definition under Fed. R. Civ. P. 12(b)(6) and 12(f).

### B.    Plaintiff's FLSA Collective Action Allegations and Overbroad Collective Definition[7]

Plaintiff seeks to represent individuals in a nationwide "collective" action under the FLSA. *See id.* at ¶ 52.   Specifically, Plaintiff seeks to represent an expansive and ill-defined FLSA collective consisting of:

> *All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

*See id.*   Plaintiff's Complaint, however, does not provide any specific plausible allegations regarding the duties of "Safety Consultants" or the complained of pay practices to which these other consultants were allegedly subject—nor does Plaintiff identify the actual roles in which he provided services to XTO ("Drilling Safety Consultant" and "Wellwork Integrity Consultant"). Instead, Plaintiff offers the typically stated, conclusory allegation that the putative class members were "similarly situated."   Tellingly, other than Plaintiff's generic allegations regarding his own supposed "Safety Consultant" duties, Plaintiff fails to make any plausible allegations regarding the

---

[7] XTO's Motion is premised in part on Rule 12(b)(6), which requires a district court to "accept all well-pleaded facts as true" and view them in the light most favorable to the plaintiff.   *Peterson v. Xpo Logistics*, 812 F. App'x 754, 756 (10th Cir. 2020) (internal quotations omitted).   XTO therefore relies here on the allegations contained in the Complaint, without waiving its right to later contest such allegations.

duties of other "Safety Consultants" (to the extent they even exist)—including other "Drilling Safety Consultants" near Carlsbad, New Mexico, or "Wellwork Integrity Consultants" in Texas. Moreover, other than his own limited experience near Carlsbad, New Mexico, Plaintiff does not even attempt to identify another specific location in which he alleges "Safety Consultants" with the same duties were subjected to the same pay policy—apart from Plaintiff's vague assertion that he also worked in Texas. *See id.* at ¶ 24. Plaintiff also fails to allege any facts regarding the number of individuals within the proposed collective or class, the locations where they performed services, or the circumstances of their own compensation, contractual and/or employment relationships (including whether they were employed or otherwise compensated by RigUp, Inc., or a different consulting firm, or whether they were retained directly by XTO). As explained below, these deficiencies render Plaintiff's collective allegations and class allegations insufficient under Fed. R. Civ. P 8's pleading standards and therefore unsustainable.

### C.      Standard of Review

Federal Rule of Civil Procedure ("Rule") 8(a)(2) requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained that a complaint does not need detailed factual allegations, but "more than labels and conclusions" are necessary, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Thus, "to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" [8] *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190-

---

[8]   Similarly, Fed. R. Civ. P. 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As a "challenge[] [to] the legal sufficiency of the pleading," a motion to strike may be "governed by the same standards as a

91 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Guereca v. Cordero*, No. 2:19-CV-568-GJF-SMV, 2020 U.S. Dist. LEXIS 54399, at *16 (D.N.M. 2020) (quoting *Iqbal*, 556 U.S. at 678).  Courts will disregard any "conclusory statements and look only to whether the remaining, factual allegations" state a plausible claim to relief.  *See Khalik*, 671 F.3d at 1190-1191.  As such, plausible factual allegations are required to support legal conclusions.  *See id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are wholly insufficient.  *Iqbal*, 556 U.S. at 678.

The FLSA permits an employee to pursue a collective action in a representative capacity on behalf of persons who are "similarly situated" to the plaintiff and who "opt in" to the collective action through a written consent to the court.  29 U.S.C. § 216(b).   To act in a representative capacity, a plaintiff may seek conditional certification under the FLSA, which permits the plaintiff to send notices to potential collective members.  As the Tenth Circuit and courts in this District have noted, the FLSA does not define "similarly situated"—however, to survive a motion to dismiss at this initial stage, a plaintiff must put forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *See Cooper v. Coil Chem, LLC*, No. CIV-16-473-D, 2016 U.S. Dist. LEXIS 169884, at *10 (W.D. Okla. 2016) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)) (internal quotation marks omitted).

---

motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)."  *In re Gabapentin Patent Litigation*, 648 F.Supp.2d 641, (D.N.J. 2009).

In the Tenth Circuit, "a Rule 12(b)(6) motion to dismiss is appropriate to challenge the sufficiency of class allegations [even] when the plaintiffs have not moved for conditional certification." *Martin v. Tap Rock Res., LLC*, 2020 U.S. Dist. LEXIS 79421, *8 (D.N.M. May 5, 2020); *Cooper*, 2016 U.S. Dist. LEXIS 169884, at *4 (explaining that "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery").   At the pleading stage, "the court will examine whether the complaint provides the defendant with fair notice of the grounds of the claim for relief, brought by a class of plaintiffs who are similarly situated." *Deakin v. Magellan Health, Inc.*, No. 17-CV-0773-WJ-KK, 2018 U.S. Dist. LEXIS 103967, at *8 (D.N.M. 2018) (internal citations omitted).   Moreover, a "court may grant the motion to dismiss the collective action claim if the complaint fails to provide fair notice of the 'similarly situated' putative class because the class is insufficiently defined or significantly overbroad." *Id.* at *3 (citing *Lenore v. Okla. Blood Inst.*, No. CIV-17-1326-M, 2018 U.S. Dist. LEXIS 25492, at *3-4 (W.D. Okla. Feb. 16, 2018) (holding that, "[i]n order to withstand a motion to dismiss a collective action claim, a plaintiff must give the defendant fair notice of the putative class.")).   Courts "will therefore review the complaint to determine whether Plaintiff has stated a plausible entitlement to relief by the putative class members [] which is sufficient to provide fair notice to Defendant." *See Tap Rock Res.*, 2020 U.S. Dist. LEXIS 79421, at *9.   Otherwise, without these pleading requirements, plaintiff's "counsel may have some incentive to keep the claims unspecific to achieve the largest possible class." *Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012).   Class definitions that lack substantial allegations that the putative class members are similarly situated are "overbroad and unworkable" because they would require "individual investigations" into each potential plaintiff's class membership, which is a "daunting" task that makes such overbroad definitions wholly

"insufficient." *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *13-14.   As explained below, Plaintiff fails to meet this standard, and, therefore, Plaintiff's insufficient class allegations should be dismissed in their entirety.

**D.     Argument**

Plaintiff's proposed class definition is defective and insufficient to place XTO on notice of the putative class members.   As noted above, Plaintiff seeks to represent an expansive and ill-defined class consisting of:

> *All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

*See* Complaint, Dkt. No. 1, ¶ 52.   Plaintiff's proposed class definition cannot survive dismissal because Plaintiff has not alleged sufficient details regarding his own duties or applicable pay practices and the allegedly similar duties and pay practices concerning the putative class members[9] and Plaintiff's Complaint lacks any factual basis to support a class definition encompassing the entirety of the United States, without any geographic limitations.   Plaintiff has plainly failed to put forth "*substantial allegations*" that he and "the putative class members were together the victims of a single decision, policy, or plan."   *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *10 (citing *Thiessen*, 267 F.3d at 1102) (emphasis added).

---

[9]  The putative class members are broadly defined as "All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States"—which needlessly encompasses an expansive range of individuals across the entire United States who performed services even only tangentially related to any aspect of safety in the oil and gas industry, without regard to Plaintiff's own role or duties as a "Safety Consultant" near Carlsbad, New Mexico, and Andrews, Texas.  *See id.*

1.     **Plaintiff's Vague Description of the Proposed Class Fails to Identify which Workers Plaintiff Seeks to Represent**

a.     **Alleged Duties and Conclusory Allegations Regarding XTO**

Plaintiff contends he worked as a "Safety Consultant" and that during his approximate twelve (12) month tenure, his "primary job duties included enforcing XTO safety Policies and procedures at XTO's and their clients' well sites."  Complaint, Dkt. No. 1, ¶¶ 24 and 27.  Plaintiff further contends that his "daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by XTO and/or their clients," and that he "would conduct [his] day-to-day activities within mandatory and designed parameters in accordance with pre-determined operational plans created by XTO and/or their clients."  *Id.* at ¶¶ 28 and 29.  Based on this generic and vague description of his own alleged duties and conclusory allegations regarding applicable policies/plans of XTO, Plaintiff attempts to represent a nationwide class consisting of other allegedly similarly situated "Safety Consultants" who performed *any* consulting work related to safety and operations in the oil and gas industry.  Such an attempt, however, fails to provide XTO with fair notice of the putative class and fails to meet the pleading standards of Rule 8 and its progeny.

To survive the pleading standards required by *Twombly* and *Iqbal* for FLSA collective actions, Plaintiff must allege "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *10 (citing *Thiessen*, 267 F.3d at 1102) (internal quotation marks omitted).  As an initial matter, Plaintiff's Complaint is devoid of *any* factual allegations—much less substantial allegations—revealing whether there was any sufficiently similar decision, policy, or plan applicable to Plaintiff and putative class members *nationwide*.  Rather, Plaintiff conclusory alleges that "numerous Safety Consultants were paid a day rate only and no overtime" and that, "[w]hile the exact job

titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work in the oilfield." *See* Complaint, Dkt. No. 1, ¶¶ 22-23. Plaintiff's failure to present any factual allegations relating to an allegedly applicable nationwide policy or plan alone warrants dismissal of the overbroad class definition. *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *13 (citing *Thiessen*, 267 F.3d at 1102).

### b.      Alleged Pay Scheme

While Plaintiff suggests his putative collective is held together by a common "day rate" pay scheme, his allegation is illusory. His Complaint is void of the economic reality of the business relationship giving rise to the services he provided to XTO. He makes no mention of the actual entity that employed him or to which he contracted—RigUp, Inc. Nor does Plaintiff mention any of the several other consulting firms that would potentially be encompassed by the overbroad definition of his proposed class. Nor does he make any mention as to how the various compensation schemes of those other consulting firms are similar to his own. Nor does Plaintiff even identify the actual roles in which he provided services to XTO ("Drilling Safety Consultant" and "Wellwork Integrity Consultant").

Plaintiff has pled no facts, nor included any related criteria in his proposed class definition, to suggest that all "Safety Consultants" in the entire United States who work for any other employer or consulting firm are similarly situated with respect to Plaintiff's allegations that he is entitled to overtime compensation under the FLSA. Rather, the sole requirement for *any* individual in the United States to satisfy Plaintiff's proposed class definition is the mere performance of services as a "Safety Consultant." *See* Complaint, Dkt. No. 1, ¶ 52. This definition is likewise fatally overbroad because Plaintiff provides no explanation of how the contemplated "day rate" scheme might operate—nor does Plaintiff narrow the proposed class to other "Drilling Safety

Consultants" or "Wellwork Integrity Consultants" who worked for RigUp, Inc. and received only a daily rate as compensation. Thus, for example, FLSA-exempt "Drilling Safety Consultants" or "Wellwork Integrity Consultants" could satisfy Plaintiff's proposed definition, as could individuals who **never** worked *any* hours in excess of forty (40) hours in a single workweek. Moreover, even employees of XTO or other unidentified third party consulting firms could be erroneously included in Plaintiff's proposed class.

Despite failing to describe how XTO—or his actual employer/contractor, RigUp, Inc.— failed to properly calculate his overtime, Plaintiff uses the "day rate" moniker as a purported class-making talisman. But, indeed, even if some or all of the putative class members received some "day rate" as a part of their compensation package from any particular consulting firm, Plaintiff makes no reference as to how those other compensation schemes are similar, nor does he mention how the compensation scheme at his own consulting firm, or any other, may be an unlawful common plan or scheme—nor does Plaintiff plead *substantial allegations* that such a compensation scheme is somehow applicable to a nationwide class. Plaintiff's proposed class of all "Safety Consultants" in the nation is overbroad and unworkable, as it encompasses a vast array of contractors that worked on XTO projects over the past three years, irrespective of whether they have performed the same or similar duties, whether they had the same or similar titles (i.e., "Drilling Safety Consultants" or "Wellwork Integrity Consultants"), whether they were subject to the same or similar practices, whether they worked for the same consulting firm, and whether there were eligible for overtime compensation or not. Thus, it is clear that Plaintiff's proposed class definition would require "individual investigations" into each potential plaintiff's class membership, which is a "daunting" task that makes such overbroad definitions wholly "insufficient." *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *13-14; *cf. McDonald v. Gore*

*Nitrogen Pumping Serv., LLC*, No. CIV-18-1010-G, 2019 U.S. Dist. LEXIS 23094, at *10 (W.D. Okla. 2019) (finding that a plaintiff had sufficiently defined the proposed FLSA collective when he provided "specific job titles, descriptions, and duties" and the complaint contained "substantial factual allegations of a company-wide unlawful payment scheme.") and *Deakin*, 2018 U.S. Dist. LEXIS 103967, at * 10 (holding same).  Plaintiff's failure to plead sufficient facts alleging a common unlawful pay plan or scheme is fatal to his overstated, ill-pled class of workers.

     **E.**     **Plaintiff Failed to Plead Facts Supporting a Nationwide Class.**

*Even if* Plaintiff's proposed class definition was sufficient to give XTO notice of the putative class members—which it does not—the Court should still dismiss Plaintiff's class allegations because Plaintiff offers nothing more than mere conjecture and unfounded speculation regarding workers outside of Carlsbad, New Mexico and Andrews, Texas, the only locations in which Plaintiff contends he worked.  Moreover, Plaintiff alleges he worked near Carlsbad, New Mexico and in Texas for approximately twelve (12) months.  *See id.* at ¶ 24.  Despite his limited experience near Carlsbad, New Mexico and in Texas, without explanation, Plaintiff now attempts to represent a class of all "Safety Consultants" across the United States.  Moreover, Plaintiff has failed to provide any factual support to his unfounded assertion that the "putative class members… have been subjected to the same [allegedly] illegal pay system under which Plaintiff Bone worked and was paid."  *See id.* at ¶ 12.  Plaintiff offers **no** plausible facts to demonstrate that he has any knowledge or awareness of *any* alleged common policy or practice that *any* putative class member was subject to, much less that such policy or practice was in *any* way unlawful under the FLSA.  As discussed above, Plaintiff admits his experience was limited to the Carlsbad, New Mexico area and Texas, and he makes no plausible allegation that he worked elsewhere.  *See* id. at ¶ 24.  Moreover, Plaintiff alleges that he provided services to XTO—neglecting to mention the economic

reality of his employer/consulting firm RigUp, Inc.—for only a twelve (12) month period.  *See id.*

As such, it is entirely implausible that Plaintiff has the requisite knowledge or awareness to present

allegations sufficient to support a nationwide class of any "Safety Consultants" based on his

limited experience with RigUp, Inc. providing services to XTO.

Plaintiff's approach is no different from the one rejected by the Northern District of Texas

in *Ecoquij-Tzep v. Hawaiian Grill* where the plaintiff "merely alleged his belief that there are

employees 'like the plaintiff' who have not been paid minimum wages or overtime, going back

three years."  2016 U.S. Dist. LEXIS 90513, at *13-14 (N.D. Tex. July 12, 2016).  Like the

*Hawaiian Grill* plaintiff, Plaintiff has merely expressed his belief, masquerading as little more than

conclusory allegations, that there are other "Safety Consultants" who were entitled to but did not

receive overtime under the FLSA because they received daily rate compensation.  As the Court

noted in *Hawaiian Grill*, such "threadbare recitals" based on Plaintiff's subjective beliefs "are

insufficient to survive a motion to dismiss."  *Id.* (citing *Iqbal*, 556 U.S. at 678).

Additionally, Plaintiff has failed to assert any specific plausible allegations regarding the

titles, duties, or pay practices of other "consultants," identify any geographic location of the other

individuals he seeks to represent, identify the varied third party consulting firms that employed

him and these other individuals, or allege whether these individuals in fact performed services in

excess of forty (40) hours per week and were entitled to but denied overtime compensation.  These

deficiencies are fatal to Plaintiff's over broad class allegations.  For example, in *Cooper v. Coil

Chem, LLC*, a sister court dismissed a plaintiff's FLSA class allegations because the propose class

of "all individuals employed by Coil Chem, LLC in the past 3 years and who were paid a salary

and a job bonus" was too broad to provide fair notice to the defendants and "included virtually

every [individual] who worked for [the] [d]efendant in the referenced time period."  *Cooper*, 2016

U.S. Dist. LEXIS 169884, at *13.  In the pending case, Plaintiff's Complaint suffers the same deficiencies and the overbroad putative class definition encompasses nearly every individual who performed services even only tangentially related to safety operations.  Therefore, the Court should reach the same result here and dismiss and/or strike Plaintiff's overly broad class allegations.

## III.    CONCLUSION

Plaintiff's FLSA collective action allegations fail to provide XTO fair notice of the putative class.  As discussed above, Plaintiff's failure to present substantial allegations relating to an allegedly applicable nationwide policy or plan alone warrants dismissal of the overbroad class definition.  Additionally, Plaintiff has failed to put forth any plausible allegations to support his proposed representation of any putative class, much less a proposed class outside of Carlsbad, New Mexico or Andrews, Texas—the only areas in which Plaintiff contends he worked.  Similarly, Plaintiff has failed to put forth any plausible allegations to support his proposed representation of any putative class of individuals who worked for consulting firms other than RigUp, Inc. Therefore, the Court should dismiss or strike Plaintiff's overly broad class definition and allegations from the Complaint.

Moreover, Plaintiff's FLSA collective allegations fail to provide any justification for this Court to exercise specific jurisdiction over claims regarding work performed outside of New Mexico.  Additionally, Plaintiff has not and cannot allege facts sufficient to establish specific jurisdiction over out of state putative plaintiffs and claims related to conduct wholly outside of this forum.  Therefore, as the Court cannot exercise general jurisdiction over XTO and the out of state putative plaintiffs' FLSA claims, the Court should dismiss Plaintiff's overbroad FLSA collective allegations and claims which are unrelated to New Mexico.

Respectfully submitted,

*/s/ Felicity A. Fowler*
Felicity A. Fowler
*Admitted Pro Hac Vice*
ffowler@mcginnislaw.com
**MCGINNIS LOCHRIDGE**
2200 Ross Avenue, Suite 4900E
Dallas, Texas 75201
Telephone: (214) 307-6961
Telecopier: (214) 307-6990

*/s/ Charlotte Lamont*
Charlotte Lamont
clamont@littler.com
**LITTLER MENDELSON, P.C.**
201 3rd St NW, Suite 500
Albuquerque, NM 87102
(505) 944-9682 (Telephone)
(505) 213-0415 (Facsimile)

David B. Jordan
*Admitted Pro Hac Vice*
djordan@littler.com
Paige A. Cantrell
*Admitted Pro Hac Vice*
pcantrell@littler.com
**LITTLER MENDELSON, P.C.**
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 652-4785
Telecopier: (713) 583-2649

**ATTORNEYS FOR DEFENDANT**
**XTO ENERGY INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 14th day of September, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Clif Alexander
Austin W. Anderson
Lauren E. Braddy
**Anderson Alexander, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas
clif@a2xlaw.com
austin@a2xlaw.com
lauren@a2xlaw.com

Andrew W. Dunlap
Michael A. Josephson
**Josephson Dunlap Law Firm**
11 Greenway Plaza, Suite 3050
Houston, Texas
adunlap@mybackwages.com
mjosephson@mybackwages.com

*/s/ Charlotte Lamont*
Charlotte Lamont